[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage. The parties were married on June 19, 1976 in Clarksdale, Mississippi. The wife's maiden name was Ellis. The plaintiff has resided in the State of Connecticut continuously for more than one year preceding the date of the complaint. The marriage of the parties was alleged to have broken down irretrievably without the prospect of reconciliation. There are three minor children issue of the marriage, Barrett Ellis Baer, born December 3, 1978. Robert Andrew Baer III, born April 11, 1981 and Anne Lewis Baer, born January 11, 1988. No other minor children have been born to the wife since the date of the marriage. Neither the State of Connecticut nor any municipality thereof has been, or is contributing to the support and maintenance of either of the parties. This was a lengthy trial. The parties spent a great deal of time pointing fingers, one at the other as to who CT Page 4730 caused the breakdown of the marriage. It is clear to this court after listening to the testimony of the parties and their witnesses, that neither party can be found at fault for causing the breakdown of the marriage.
The parties are 45 years old.
The husband is a graduate of Harvard College and Pace University Business School. From 1983 through early 1992, he was employed at Merrill Lynch as a managing director. His total earned income in 1992 was approximately $2,000,000.00. See, Exhibit 13, his combined W-2 income statements for the year 1992. Note that this Exhibit includes Merrill Lynch income as well as Bear Stearns income.
In March of 1992, the husband voluntarily left his employment at Merrill Lynch to become an employee at Bear Stearns Company Incorporated. (hereinafter called Bear Stearns) The plaintiff is a senior managing director in the financial institution's group. The court finds that the husband's total compensation from Bear Stearns for the fiscal year ending June 30, 1993 will be at least 1.3 million dollars. His income is payable as salary of $200,000 paid in equal monthly installments and a bonus of 1.1 million dollars payable after the close of the fiscal year on June 30, 1993. Exhibit AA shows his monthly draw of the $200,000.00.
The husband has certain benefits from his employment as shown on Exhibit N. In addition, he has the use of a Corporate American Express charge. He has the benefit of a $27,500.00 amount for reimbursement of business expenses over and above normal corporate charges.
This court on reviewing his tax returns for the year submitted into evidence, and the income tax records for 1992 finds that 1992 was an unusual year for him. He received money both from Bear Stearns and Merrill Lynch. Because each company paid him money earned in different fiscal years, the actual receipts were approximately $1,950,000.00. It is clear from his testimony that he contemplates income of only 1.3 million dollars this year.
Much has been made by the wife to establish that the husband gave up great amounts of money from Merrill Lynch to go to Bear Stearns which were in the form of deferred compensation, in particular Merrill Lynch stock. The husband gave a reasonable business and lifestyle explanation for his decision to move to Bear CT Page 4731 Stearns. The wife's claim is that there is more than meets the eye here as it relates to his potential income package. The husband testified he evaluated his package at Merrill Lynch of income compensation at $1,000,000.00. He had certain stock option benefits that he valued at $300,000 or $400,000 per year. When he took the job at Bear Stearns he bargained for the $1,300,000 thus, in his opinion there was no loss in income as he perceived it. He felt that the $1,000,000 was a proper salary on "the street" for this job and the $300,000 extra covered the Merrill Lynch stock options lost.
The wife is also a college graduate. The parties met when she was working as an investment counselor at Scudder. When the parties married, she resigned from Scudder and the parties relocated to Washington because of the husband's job shortly after the marriage. She was a travel agent in Washington. She left her job when her daughter Barrett was born. She has not worked in an income producing job since then. Neither of the parties brought substantial assets to the marriage.
During the course of the marriage the wife was what she described as "mom", (she did not like the word homemaker) and was involved in her children's and the communities activities. She was a volunteer and treasurer of volunteer organizations and major fund raisers. She was involved with the childrens school at Greenwich Country Day. She was involved at the Round Hill Club as a volunteer and she was on the Greenwich Skating Club Board of Directors and was Figure Skating Chairman. During the course of the marriage, the husband left the parties personal finances up to her. She kept the check books, kept the information for the tax returns and kept the parties financial information on a computer. Because of the demands of his job at Merrill Lynch, she was involved on a regular basis with company activities, that included one or two times per month dinner business meetings in New York City and four or five day trips that the husband attended on company business that she attended with other wives.
The wife as a young person rode horses and her daughter Barrett has indicated an interest and has performed well as a rider. The court saw a wall of her room covered with ribbons and prizes.
In approximately 1979 the parties moved back to Greenwich and purchased a home in Cos Cob. That house was sold and they purchased in approximately 1984, their present home at 29 Will CT Page 4732 Merry Lane in Greenwich. They paid $375,000 for that house. It has been extensively renovated including, but not limited to an additional story, an added wing, and they have more than doubled the size of the house. The court finds that the present fair market value of that house is $1,200,000.00. There is a mortgage on the premises in the approximate sum of $770,000.00.
In January of 1992 the wife's attention turned to purchase of a house barn and eight acres of land in North Salem, New York. The property was purchased for $960,000; see, Exhibit 10. It was purchased on April 16, 1992. The wife is presently living in that property with the children. The husband is living in the house in Greenwich. Title to the property in North Salem, New York on Hardscrabble Road is held by Forellis Farms Limited. The mortgage on the property is $660,000.00. The court finds that the value of that property is still $960,000.00, no evidence having been given to the contrary concerning the valuation. The wife has indicated that she intends to run the farm as a business and has given the court evidence that it looks like at present, that break even or a couple of thousand dollar loss is the proper estimate for the next years income. (Exhibit HH)
This is almost a seventeen year marriage. The two oldest children attend Greenwich Country Day School. The youngest child attends Round Hill Nursery School. She will be attending Greenwich Country Day in September of 1993. The parties and the family have enjoyed the luxury of a privileged lifestyle. The Greenwich home was beautiful, expanded and renovated.
There has been constant household help, including a married couple who resided with the family. The wife of the married couple's role has changed over the years, but she has been a full-time employee for a substantial period of time. Her husband has a full-time job off the premises but assists in outside projects and is paid a sum for those services. They have had cleaning help on a regular basis. They have taken three or four expensive vacations each year. On one occasion there were private villas and on another occasion there was a chartered yacht. The children attend expensive private schools. The wife and oldest daughter's interest in horses and riding is an expensive avocation.
The wife's psychological condition has been brought into issue in this case. It is clear that after the birth of the youngest child, the wife sought a psychiatrist and terminated that treatment a short period of time after seeing the doctor. In June of 1991, CT Page 4733 the wife returned to Dr. Phansalka a Greenwich Psychiatrist.
Dr. Phansalka's diagnosis was that there was a bipolar disorder. She was a manic depressive. The doctor is presently treating her with lithium. At some point during the course of time that she was in treatment with the doctor, the wife was on Prozac. It was clear to the doctor that psychotherapy was not enough when she first saw her and that the wife needed both the Prozac and the psychotherapy to try to get her back to her old self. It does no significant good to recite all of the problems related by the wife to the doctor. Suffice it to say that the doctor and the wife both conclude that an ongoing relationship with the doctor is essential to her mental health and she is seeing the doctor presently and is taking her Lithium.
This decision cannot be written without the court addressing in some part of its decision, the perceived causes of the break down by each of the parties. As the court has previously indicated, although both of the parties are able to list things against the other that they believe were the causes of the breakdown, this court perceives those matters as the reasons for the breakdown rather than the causes of the breakdown and assessing fault to either of the parties thereon.
The husband claims that the wife's use of alcohol was excessive. The court finds that on occasion the wife abused alcohol. By her own admission she indicated she abused alcohol. The husband claims that the wife's manic depressive behavior caused the break down of the marriage. The court finds that there was a period of time when she was not under control of her medication and this caused problems in the marriage. The husband claims that the wife's excessive spending habits broke down the marriage. It appears to this court that these parties spent the money that they made over the years and categorizing her spending as the cause of the breakdown is without foundation. The husband claims that the wife's total dedication to horses caused the breakdown of the marriage. It is clear that the wife spent a great deal of time with the one daughter and her horses, and that certainly may have contributed to the break down in the marriage, but it was not such that this court will allocate that to be a cause of the break down of the marriage.
The wife claims that the husband's having committed adultery with Mary Mallory Jennings, her closest personal friend, was the cause of the break down of the marriage. The husband by his CT Page 4734 statements indicates that he did not have sex with Mrs. Jennings in 1991 other than what he described as a romantic kiss in September of 1991. The husband claims that he didn't have sex with Mary Mallory Jennings until the late summer of 1992 and has had sex with her thereafter. This was after the action had been brought.
This court is not sitting in moral judgment of these people. But this court has been asked to consider these factors under General Statutes 46b-81 and 46b-82 which indicate that the court should consider "the causes for the . . . dissolution of the marriage" as a factor in awarding alimony and property. The court assesses none of these allegations to be the causes of the break down. The problems cited by both of the parties throughout the course of the testimony was the reason this court has concluded that the marriage has broken down irretrievably.
The parties, prior to the conclusion of the trial, made an agreement on personal property which was made an order of the court and the parties agreed on the custody and visitation issues and that was previously made an order of the court and they are not addressed herein.
This court has taken into consideration all of the statutory criteria in 46b-81, the assignment of property and transfer of title statute; the court has taken into consideration all of the statutory criteria in 46b-82, the alimony statute; the court has taken into consideration all the statutory criteria in 46b-62, the attorney's fee statute; the court has taken into consideration46b-84, the child support statute; the court has taken into consideration the child support guidelines and finds that this case is not a guidelines case, in that the income of the husband is beyond the maximum provided for in the guidelines. The court has listened to the parties and their witnesses. The court has listened to the arguments of counsel. The court has reviewed all of the exhibits entered into evidence. The court has reviewed the parties financial affidavits as originally submitted and as amended. The court has reviewed the wife's affidavit of attorney's fees. The court has reviewed the parties claims for relief. The court has reviewed the aides to the court prepared, showing the tax consequences of the financial orders. All of the above have been taken into consideration in rendering this decision. Accordingly, the court orders as follows:
(1) The marriage is dissolved on the grounds of irretrievable breakdown. CT Page 4735
(2) The North Salem, New York property known as Forellis Farms shall be the sole and exclusive property of the wife. She shall hold the husband harmless from the mortgage thereon.
(3) The husband shall have the sole and exclusive use of the Greenwich property known as 29 Will Merry Lane. The husband and wife to remain the joint owners thereof. On the sale of the premises the parties shall share equally in the net proceeds on the sale. Net proceeds are defined as the amount received by the parties after the mortgage is paid off and all of the normal costs of the sale including but not limited to real estate conveyance taxes, brokerage fees, attorney's fees for the sale and like expenses as established by the custom of the Greenwich Bar Association, are paid.
The husband shall pay all of the expenses of the house while he occupies it including, but not limited to the mortgage and real estate taxes. The house shall be listed for sale if not sooner sold on March 1, 1997.
(4) The husband shall keep as his sole and exclusive property his pension from Merrill Lynch which is shown on his affidavit to pay $30,000 per year at age 65.
(5) All of the property shown on the husband's financial affidavit entitled Merrill Lynch Limited Partnership and the CMA account at Merrill Lynch are to be the property of the husband. They are shown on his affidavit as three ML Kecalp Plans, and two Merchant Banking Cash accounts, one as No. LP 11 and one as LP 111.
(6) The husband shall retain as his sole and exclusive property his 401K shown on his affidavit having a current value of $12,000.00.
(7) Each party shall retain their IRA accounts in their respective name free and clear of the other's claims. The husband shows his with a current value of $80,943.00 and the wife shows her's with a current value of approximately $17,800.00.
(8) The household furniture and furnishings are divided as was stipulated on the record between the parties.
(9) The husband shall retain as his sole and exclusive property, his checking account. CT Page 4736
(10) The husband shall retain as his sole and exclusive property the Round Hill Club Bond.
(11) The wife shall retain the horses shown on her affidavit as having a value of $150,000.00. The court has taken into consideration in making this award that Scotty has had an offer of $80,000.00 for his purchase subject to certain contingencies. The wife rejected that offer out of hand indicating that the value of that horse is approximately $100,000.00.
(12) The wife shall keep as her sole and exclusive property the U.S. Trust checking account in the name of Forellis Farm shown on her financial affidavit.
(13) The wife shall keep as her sole and exclusive property, the Cambridge Trust checking account.
(14) The wife shall keep as her sole and exclusive property, the Chase Bank checking and savings account in the total sum of $22,000.00.
(15) The wife shall keep the County Bank joint account shown with $70.00 in it as her sole and exclusive property.
(16) The wife shall keep as her sole and exclusive property the 1988 Ford Taurus.
(17) The wife shall keep as her sole and exclusive property the tractor shown with an estimated value of $15,000.00.
(18) The wife shall keep as her sole and exclusive property, the Kingston Two Horse Trailer.
(19) The wife shall keep the oil and gas rights — Oxy International valued at $4,500.00.
(20) The wife shall keep the potential receipt of $11,000.00 from her father's newspaper sale.
(21) The wife shall keep her own personal jewelry.
(22) The husband shall keep as his sole and exclusive property the Cambridge Trust checking account in the sum of approximately $3,000.00 as shown on his financial affidavit. CT Page 4737
(23) The husband shall keep as his sole and exclusive property, the Fleet checking account shown on his financial affidavit in the approximate sum of $66,000.00.
(24) The husband shall keep as his sole and exclusive property the 1974 Porsche valued at $11,000.00 and station wagon (or its replacement) valued at approximately $14,000.00.
(25) The husband shall pay to the wife as alimony the sum of $350,000.00 per year payable in equal monthly payments of $29,167.00 on the first day of each month in advance, commencing June 1, 1993.
(26) Said amount of alimony to be paid to the wife until the wife dies, the husband dies, the wife's remarriage or cohabitation under the statute.
(27) The husband has represented that his income for his fiscal year ending June 30, 1993 will be 1.3 million dollars. The court has relied on that amount in making these orders. If the husband receives in excess of 1.3 million dollars for the fiscal year ending 1993, the husband shall pay to the wife, 20% of said incremental amount at the time he receives it.
As to future years, the court is not addressing the amount if any, to be paid by the husband as his income exceeds 1.3 million dollars. This court is leaving to the parties their remedy under our statute which provides in Section 46b-86 that a motion may be made where there is a substantial change in circumstances of the parties. The court leaves it to a later court to determine whether the needs of the wife and the children are such that increased income by the husband should be a reason to increase her alimony and child support. The court would hope that the wife would be working towards obtaining gainful employment.
This court is expressly rejecting the wife's request that the husband pay the alimony and child support due for the year, in advance when he receives his June 30, 1993 payments.
(28) The Husband shall pay child support to the wife in the sum of $100,000.00 per year payable in equal monthly payments of $8,333.00 on the first of each month beginning on June 1, 1993. The child support to be allocated among the children equally. Said child support shall be paid until the husband dies, the wife dies or the children reach the age of 18, whichever event occurs first. CT Page 4738
(29) The husband shall pay one-half of the children's private school tuition and expenses. In addition, the husband shall pay one-half the children's unreimbursed medical expenses. In addition, the husband shall pay one-half of the counseling, tutoring and speech therapy charges for the children.
(30) The husband shall keep and maintain health insurance for the children as long as he is able to provide that coverage for them.
(31) The husband will co-operate in obtaining COBRA benefits coverage for the wife through his employer. The wife is to pay the cost thereof.
(32) The husband shall keep his Bear Stearns Life Insurance shown on Exhibit M (copy attached hereto) for the benefit of the wife as long as he is paying her alimony, those are the two life insurance policies shown thereon. One is the Group Universal Life Insurance under Connecticut Mutual for $300,000.00. The other is a Split Dollar life insurance policy. The carrier is National Life of Vermont, that coverage is $562,989.00.
In addition, the husband is to carry and pay the premiums for the first five insurance policies shown on Exhibit BB (copy attached hereto) for the benefit of the wife. In addition, he is to carry the Trust life insurance policies for the benefit of the children as shown on Exhibit BB. The court is aware of the cost of these insurances and provides that if these costs substantially increase over the years the husband may petition the court for relief, as this court considers that to be a periodic payment subject to modification under 46b-86.
(33) Each of the parties are to pay their own liabilities as shown on their financial affidavit.
(34) The husband is to make a contribution to the wife's attorney's fees in the sum of $25,000.00. The court has made this order in order not to undermine its other financial orders. Said payment to be made when the husband receives his bonus this year.
(35) The parties agree to equally share the 1991 and 1992 tax refunds. If the wife has already taken the 1991 refund, she is to pay the husband one-half of that refund. CT Page 4739
(36) All other claims for relief not expressly addressed herein have been rejected by the court.
KARAZIN, J.
 BEAR STEARNS
M E M O
To Robert Baer Date 11/10/92
From Mark Haynie CC Personnel Benefits
Subject Benefit Summary
The following pertains to your benefits at Bear, Stearns Co. Inc.:
Group Universal Life Insurance Carrier: Connecticut Mutual Coverage: $ 300,000.00
Supplemental Long Term Disability Carrier: Metropolitan Life Coverage: $ 3,425.00 per month
Group Travel Accident Insurance Carrier: Federal Insurance Coverage: $ 500,000.00 Beneficiary: Katherine E. Baer
Group Long Term Disability Insurance Carrier: Mutual of Omaha Coverage: $3,500.00 per month
Major Medical Coverage Carrier: Blue Cross/Mass. Mutual Coverage: Family Plan
Split Dollar Life Insurance Carrier: National Life of Vermont Coverage: 562,989.00 CT Page 4740
If you have any questions, I can be reached at 8-226-2061.
[EDITORS' NOTE: THE LIFE INSURANCE SUMMARY IS ELECTRONICALLY NON-TRANSFERRABLE.]